Good morning, may it please the Court. I am Michael Morges, attorney for Mr. Collins and Mr. Ko. In the record, there is evidence that the City has a policy and a practice that if you complete your evaluation period or your annual review and you receive at least meets expectations or greater, you'll get a step increase. There is no evidence in the record that if you do the same that you won't get a step increase. And I think this is kind of a hang-up in this case. The District Court, I think, overreads the meaning of discretion in the McKinney case. And McKinney and the defendants, of course, rely on that, as would I. Sure, they have discretion to, I suppose, ultimately not give you an increase. But the reality is increases are there to reward good work. But Jungle, who is the person who testifies as to the City, she testified that the employees are eligible for a step increase after one year. In the previous step was an evaluation and recommendation by a supervisor. She also testified that the step increases are merit-based. Quote, it's merit-based. They're not automatic. They're eligible after one year with performance and the evaluation and the recommendation by a supervisor. How does that square with what you said was the assertion was the state of the record? It doesn't, does it? Well, first of all, the declaration of Sergeant Tigner does say that the practice of the City is that if you would get at least meets expectations or greater. You'd be eligible for the merit increase, not that you would get it. No, Tigner says that you would get it. And he hasn't seen one that says that. Can you give me a record citation of that, please? Volume 2A. So there's no difference between being eligible and getting adjudicated a merit increase, in your view? I think there's somewhat of a semantical difference. First, what Tigner says is, in my experience, and this is on, I'm sorry, it's on page 93, every full-time employee that I'm aware of after receiving a meets standards or better performance evaluation increased in step at their one-year anniversary mark. I think that. Well, but just a minute. There's no question what Tigner says, but you have to evaluate the context of that statement, don't you? Because what Tigner goes on to state that, in his experience, every full-time employee after receiving a meets standard or better performance evaluation increased in step. Right. He specifically stated that the exception to this is when employees are not recommended for a merit increase in their yearly performance evaluation. So even he says there's an exception, and even he says it has to do with the performance evaluation, which, as I understand it, you even agree that your client couldn't have been evaluated while he was in the military. Yes, that's true, but I think that that is part of what the Tilton case talks about, is we never really can know for sure if someone's going to satisfactorily perform their job when they're on military leave. Well, if they can't be evaluated, and you're stipulating to that, and even going under what Mr. Tigner says, then there's no way they could have got this increase because they couldn't have been evaluated. But this same particular issue, whether someone's performance could be evaluated, was brought up in Tilton, where? Well, I understand what Tilton said, but what I tried to do is look then at the evidence, and I looked at what is the evidence in this particular case, and with all of the depositions, all of the declarations, everything, your best one, it seems to me, is Tigner, and you focused on the language. So I looked at Tigner, and I tried to put it in context. And if you put it in context, you have to look at, he says, in his experience, every full-time employee after receiving a meet standards or better performance evaluation increased in step. That's right on ER 93. And then he says, the exception to this standard is when employees are not recommended for a merit increase in their yearly performance evaluation, which is nothing more than back where we were. It's totally discretionary with the city and based totally on the evaluation. I don't think, I suppose that at the end of the day, it may be discretionary upon the city. But I think the question is this. If you get meet standards or better, is it reasonably certain that you will get a merit increase? And I think there's evidence in the record that, yes, there is. There may be conflicting evidence. But that's something to resolve on. I'm sorry. That's my problem with this case, is that it seems to me there's conflicting evidence in the record as to, it seems to me that if you get a meet standards and that, you know, we don't even know what percentage of anybody doesn't get meet standards, it's reasonably certain you will get the increase. But there's other evidence in the record, the city primarily, that says, no, no, no, it's totally merits-based. Merits-based and length of service-based seem to be labels that are being used in this case. And I'm not sure that the facts are there that actually demonstrate one way or the other how it actually works in the city of La Habra. I think that my friend may be able to answer that a little bit more clearly. But the evidence that we have, I think, Judge Smith, if there was evidence in the record that says, if you meet standards or better, you still might not get, you don't regularly get an increase. And it doesn't say that. I vote that's exactly what Tigner says, so that's why I read you the statement. It also worries me just a little bit. At page 13, it seems to me that you agree in your brief. You agree that increases are contingent on satisfactory performances. I don't think that's a problem because the tilting case gives the employee who's on leave the benefit of the doubt that they will perform satisfactorily. That's the whole point of that passage in that case where the court said, the whole Benjamin Franklin quote, death and taxes, where the court says, a veteran could never prove with absolute certainty how he would have performed. And the CFR, I think it's 1002.030 maybe, and it's cited in the city's brief, says that you're supposed to look at the history of the employee's performance. And that would seem to suggest that it's somewhat circumstantial whether they would have performed satisfactorily or not. Well, if I look at the history of your client's performance, I couldn't come to where you want to go based on this record. Well, he has. Because the record is to him are that the step increases do not evidence that they're automatic at all. Because he did not receive that first increase? Well, yeah. He didn't receive the first and he didn't receive the second and finally got something later on. Right. Once he met the standards, once his evaluations were meet standards. I think that actually proves my point because he had evaluations that were poor. He was performing poorly. It was never that he did not have the willingness to perform. They thought his attitude was great, and that's in 586 of the record. But these were just performance deficiencies. And clearly he turned it around. And this proves or at least supports my point. When he was not performing well and not meeting standards, they extended his probation and did not give him an increase, just like Tigner said, if you're not doing well during probation. When he finally turned it around and did well and met standards, they gave him an increase. Because that's what you usually do. That's how you reward good performance. The discretion, Your Honor, that you're talking about that comes from, that only seems to come from the McKinney case is on a much greater scale where they say you have to exercise discriminating managerial discretion. And in that case, it was choosing two employees, actually an employee and a non-employee, to fill a position. There was no guarantee that length of time would entitle an employee to the position that opened up. All that the employee would get is a preference. And in the McKinney case, the court recognized that the employer had to choose between two employees. That's, we don't have that issue here. We just have one employee, no competition, not that kind of discretion. The only discretion really may be how do you evaluate the employee? Do you think they met standards? But once you do that. Your position is once he gets a meet standard, if he's gone for 10 years in the military, he gets a merit increase every time that he's, every year, right? Well. Because the presumption under Tilton carries a day. Ten years is a more difficult. Five years. I understand. Two years. The hypothetical. How do we distinguish between the time? I'm not sure where that line might be drawn. But I don't think we have to draw it in this case because he was gone not that long. Here you could assume that he would perform as he's been performing. And you look at the work history as the CFRs recommend. After 10 years, you can't really say that's what he was doing. So you're saying the year and a half in this year is not long enough for us to make my colleagues' hypothetical important? Oh, it's important. But I don't think that, I think that as time goes on, particularly 10 years, I don't think that you can give, you necessarily need to give them the benefit of having satisfactorily performed, as Tilton talks about. Going back to Mr. Tigner, he says after the sentence you quoted, the exception to standard practice is when employees have not successfully completed probation. Your man did complete probation. When they are not recommended for a merit increase in the yearly performance evaluation, doesn't that seem to implicate that they have to have a yearly performance evaluation in order to get a merit increase? Yes, it does indicate that. It does indicate that. That's what I thought. But the evaluation, what he says is that there is the possibility that he, in every veteran's seniority case, the possibility exists that work of the particular type might not have been available, that the veteran would not have worked satisfactorily during the period of his absence, and that he might not have elected to accept the higher position or that sickness might have prevented him from continuing in his employment. In light of the purpose and history of the statute, however, we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights. So in Tilton, the Supreme Court clarified McKinney and explained that there is some of that kind of uncertainty that exists. That's the passage I was referring to. And also McKinney was an advancement case. This is just a step. The considerations for advancement I think are much greater than just ordinary incremental step increases. Advancement is different than a step increase in pay? Is that what you're saying? Well, I think the considerations for advancement are different. Do I promote you to sergeant? Do I promote you to lieutenant? Or you're an officer and now you're at step C for doing good work for the past year? I think those are different considerations. I guard judicial assistants. I'm sorry? I guard judicial assistants. They don't get promoted to judge. It sounds like you're saying the bank gets away with it because the bank never gives any increases. They just give you an increase in name or title. Well, an increase in rank is there's different job responsibilities. You have higher authority. Okay, I understand what you're saying. More responsibility. And pay may be tied to that. But here we're not asking about an advancement. We're at the same position, but an increase that is tied to longevity of service and satisfactory performance. And does the pension, whatever pension, right, that might go along with that, flow automatically with the step increase? Oh, does the benefit paid in go with the increase? Well, I would imagine that. It would seem like that would be an automatic result. I would think that if your wage increases, then the amount of your pension is going to increase in the benefit. Yes. So I'm not sure it's a separate issue. No, I don't think so. I think that the city sees it as a different issue as whether he should have exhausted a particular administrative remedy. But USERA doesn't require you to exhaust administrative remedies before seeking your rights. The one final thing I'd like to say, I know I'm over my time. If I could just take a couple of seconds. I can't imagine that anybody would ever work at a place where there are step increases that are available yearly, and that if you do a good job that year, you do not get an increase. That would kill morale. That's the carrot that's dangling in front of you every year, among other considerations, to do a good job. It would be unlikely that someone who meets standards would not get the step increase that has been bargained for by the bargaining unit. Otherwise, what's the point of it? And if they were to realistically withhold that increase, it would become illusory. I do a good job and I don't get anything for it when the whole purpose of the increase is to reward that. Thank you, unless there's other questions. Good morning, Your Honors. May it please the Court, Mark Meyerhoff for the City of Le Havre. There was a lot of talk about the reasonable certainty standard, and that standard, frankly, doesn't even apply in this particular case. The United States Code, Title 38, 4316, makes it clear that when you're dealing with a non-seniority benefit, such as the merit pay increase in this case, that the only standard that the city has to meet is to make sure that it's treating Mr. Coe the same as other employees who are on any other type of leave. There's no question on the record that this is not a seniority-based standard. This merit pay increase is completely based on discretion, as Justice Smith pointed out. Well, isn't it true? Isn't it true? It's judge. We're judges. Isn't it true that as long as the police officer meets standards, the increase in pay in staff is automatic? Well, Mr. Tegner said that, and … I'm asking you, is it true? It's true that if an officer meets standards and is evaluated during an entire year period … But wait, I know. Aside from that, if an officer meets standards, he is automatically moved up a step. I can't say that that's – I don't know the history of every officer who's met standards in that city. Isn't that the city's policy? I don't believe it is. I don't believe it is. There's three policies that are in the record. One is from the collective bargaining agreement between the police officers' association and the city, and that says all step increases are based on merit. It must be recommended by the employee's supervisor, subject to the approval of the police chief or designee. The second policy is Section 4.01.1 of the city's personnel rules, which says salary increases are intended to reward job performance and are not given on the basis of length of service alone. The third is Section 4.01.1, Paragraph 4, which says salary increases within a range shall not be automatic. They shall be based upon merit and granted only upon the recommendation of the department head. The scenario that you propose may happen in most cases, but I can't say it's an automatic. It's an automatic merit pay increase. I believe that it's not. Isn't the question under Section 20 CFR 1002.213, isn't the question whether there is a high probability that the employee – so we look at the individual employee here – would have received the seniority or seniority-based right or benefit if he had been continuously employed? So that's the question. So the question is whether Mr. Coe, who left the department for military leave with having met standards and improved his performance, whether, as to him, there's a high probability that he would have received the seniority-based right. I'd be very happy to answer that question, but I just want to point out that that's standard. Isn't that the correct question that we should be asking? I don't believe it is. Well, if this isn't the correct question, and you're saying that any city can write policies that allow it to circumvent the statute. Well, right. The regulations under the statute, and I don't think that's how federal law works. So that's the question we have to ask. If that's the question, I'd be happy to answer it. I don't believe there is reasonable certainty that Mr. Coe would have. I don't think it's your question. You're the person who gets to answer that question. I think that's the finder of fact question. And the finder of fact in this case correctly determined that there was not reasonable certainty. No, because this was summary judgment. And if there's any facts to be found, you can't grant summary judgment. Your Honor, if I may just say that there's no evidence in the record that Mr. Coe would have reasonably met standards if he was evaluated during his military leave. Well, there is some evidence in the records. He had already met standards before he left. That is evidence in this record. But I don't believe that meeting standards one time out of three, he didn't meet standards. But it was the last time, the last time before he left, right? Correct, yes. So that is some evidence in the record of a probability that he would have met standards again and been entitled to the step. But it's not a high probability. It doesn't make it. Well, that's not the point. My point is summary judgment shouldn't have been granted because there are issues of fact in this record. The fact that he met standards once, I don't believe meets the standards set forth in the regulation that you cited, that there has to be a high probability. But isn't that exactly what the prior fact would be instructed? If you find there was a high probability, then he would be entitled. But that's something that is based. If meeting the standard once is evidence that you will meet it every time thereafter, then the jury can consider whether that is sufficient to establish a high probability. Now, my question to you is the same question as Mr. Morgan's. He meets the standard once, right? Ten years from now, is there a high probability that he would meet it again? And if not ten years from now, what makes it say that one year from now or two years from now he would meet it again? I don't believe it indicates a high probability that he will meet it either ten years from now or ---- It would not be sufficient evidence that a rational trier of fact would find high probability. I believe that's true, absolutely. Pardon me for giving you the line. I appreciate that. The performance fluctuates, and it certainly fluctuated with Mr. Coe. He did not meet it after six months. He did not meet it after nine months. And his 12-month initial probation was actually had to be extended by an additional three months to allow him to finally meet standards. I understand that, but to me that's a factual argument. I just think that there's probably enough in this record under the Tilton case that it should have gone to a finder of fact and not been decided on summary judgment. Tilton has been mentioned. I do want to point out that Tilton affirmed the McKinney case. It specifically talked about ---- It reaffirmed the McKinney case, but it also clarified it because the Supreme Court said that you have ---- there are various vagaries at play here, and the purpose of this legislation was to protect our returning servicemen so that while they're serving their country, they're not put at a disadvantage in their regular work at home. And so it's to be construed liberally. It is, but again, I believe that McKinney and other cases that follow that we have cited state that the reasonable certainty standard really only applies when we're dealing with seniority-based benefits. And I believe the record is clear that this is not a seniority-based benefit. And I don't believe there is a dispute of fact as to that issue. The rules make that clear. The city's practice makes that clear as indicated by what happened to Mr. Coe, as well as what happened to ---- But that just returns me to isn't it true that if you meet standards, if you meet standards, you get this. But it has to reach that level, and I don't believe there's a trial of fact. Meet standards. How high a level is that? Well, I believe in the regulation it refers to a high ---- I don't have the regulation, but I believe it's high probability. I may be ---- No, no. Within your city, your police force, what is meeting standards? To me, that's a pretty low standard of performance, that you meet standards. I mean, I would want to be above standards or, you know, extraordinarily ---- extraordinary performance, but not just meet standards. I don't believe it's a low standard. I believe the fact that Mr. Coe couldn't meet standards on two previous occasions ---- But that's when he started the job. You see people improving their jobs. Well, it's unusual for an officer, and I believe that's in record, not to pass probation after 12 months and not to receive a merit pay increase. So it was unusual, and he was an exception to what usually happens. So to meet standards, especially as a police officer, is a serious evaluation, obviously. But it's certainly not automatic, as indicated by what happened to Mr. Coe himself. And Sergeant Forgass's declaration also states that he, as a veteran who was out on military leave, did not receive merit pay increases during his military leave. So it indicates the city's practice is consistent with the rules that I spoke of. Is there any evidence in this record that the plaintiff's pension benefits have been negatively affected? The pension benefits are ---- the answer is no. The pension benefits that the plaintiff is owed is simply ---- he can simply recover those by contacting and showing proof to the public employee retirement system, CalPERS, that he was out on military service, and he will then be credited back with the money that he is owed for his pension benefits. There's no dispute that the city is perfectly willing and eager to pay those pension benefits. The only issue is that he has to initiate the contact, and then CalPERS has to tell the city how much is owed. And he has just for some reason failed to mitigate those damages that he claims he has. Thank you.
judges: Wardlaw, Bea, Smith